## Executors of Shoenberger *versus* Hackman.

*Variance.—Amendment.—Primary and Secondary Evidence.—Deed of Wife.—Escrow.*

1. Where an action on a verbal promise to pay a sum of money, for the release of an interest in real estate, in addition to the consideration expressed, is fully tried on the merits, the judgment will not be reversed on account of technical objections or defects, such as a variance between the date of the contract, as laid and as proved, especially if the defendant was not prejudiced by the variance. If amendable in the court below, this court will consider it as amended.

2. The rule which excludes secondary evidence in a contest with primary, does not mean that everything is secondary, which is not of the highest order, but only that which discloses the existence of other evidence, the non-production of which may be supposed, that if produced, it would work against the party offering it; and, therefore, where the contents of a release are not involved in the issue trying, its execution may be proved as an independent fact, without the production of the instrument.

3. A deed executed by husband and wife, for lands of the wife, not delivered in her lifetime, is inoperative, and cannot be made to pass her estate, as against her heirs, by delivery after her death; nor can it be considered as an escrow, where the proof was clear that it had been offered to, and refused by the grantee, and returned to the grantors during the lifetime of the wife.

Error to the Common Pleas of *Lancaster county.*

This was an action of *assumpsit* brought by Abraham S. Hackman against John G. Miles and Michael Berry, executors of Peter Shoenberger, deceased, to recover the sum of $5000 with interest, on an alleged contract with said deceased.

The case was this :—George Shoenberger was owner of part of Huntingdon Furnace. He devised it with other property to his two heirs, Dr. Peter Shoenberger and Mrs. Barbara Hackman. Dr. Shoenberger, in 1832, bargained with Mrs. Hackman's husband (by articles) to purchase his interest for $13,000. A deed was prepared in that summer, executed by Hackman and wife (she not having signed the article of agreement), and sent by H. Musselman, with instructions from Hackman to deliver it to Shoenberger if he paid the purchase-money agreed on. Shoen-

[Executors of Shoenberger *v.* Hackman.]

berger refused to take the deed or pay the money; told Mussel-
man to tell Hackman so, and return him the deed with advice
not to sell.

Musselman returned the deed to Mr. and Mrs. Hackman, and
told them what Shoenberger had said. Soon after, in the
autumn of 1832, Mrs. Hackman died. In the summer of 1833,
Shoenberger called at Hackman's, in Lancaster county, and
offered $8000 for the deed. Hackman agreed to this, got the deed
and delivered it to him. Thirteen years afterwards, or more,
Hackman died, and his wife's heirs, viz. Abraham S. Hackman,
Maria Zook, Elizabeth Bowman, and Anna Musselman, claimed
her interest in the Huntingdon Furnace property, as not passing
by the deed to Shoenberger. Two of the heirs brought eject-
ment to recover possession, and served the writs on the tenants
in possession, about twenty in number. Dr. Shoenberger was
made defendant, but being out of the county, was not served,
and never appeared or took any defence.

Shortly after suit brought, Dr. Shoenberger went to the heirs
in Lancaster county, and compromised with all of them but one—
Mrs. Bowman. The compromise consisted in the heirs agreeing
to sign a release to his sons, to whom he said he had sold it, on
their paying (through him) $1000 then; and he agreeing and
undertaking, that if Mrs. Bowman, who refused to settle,
recovered or received more for her claim than the $1000, that
he, the Doctor, would pay a sum equal to the difference between
the $1000 and the sum thus received or recovered. On this
condition the paper was signed. Mrs. Bowman proceeded with
her suit, and, on the eve of trial, defendants settled, and paid
her $6000. A. S. Hackman, claiming to be made equal to her,
brought this suit against the administrators of Dr. Peter Shoen-
berger, as above stated.

To a declaration setting forth the above case in the usual
form, the defendants pleaded *non assumpserunt*, and on this
issue the cause was tried.

During the trial exception was taken by defendants' counsel
to the admission and rejection of evidence; the defendants also
presented several points on which the instruction of the court
below was requested, all which are set forth at length in the
assignments of error. The jury, under the charge of the court
(LONG, P. J.), found for the plaintiff $5205.56. A motion was
then made in arrest of judgment, which, on hearing before Judge
Hayes, was overruled, and judgment entered on the verdict.
Whereupon the defendants sued out this writ, and assigned for
error the following matters, to wit:—

1. The court erred in admitting the evidence of Jacob Souder
" that about the year 1850 he was sent for and went to the
house now of Henry Shaffner, and there met Dr. Shoenberger,

Mr. Hackman being present. That Dr. Shoenberger told him that he wished him to take the acknowledgment of Hackman and wife to a paper which he produced, and said it was a release of Hackman's interest in his mother's estate in Huntingdon county. He said the condition on which it was to be signed was, that if Mrs. Bowman (sister of plaintiff) should recover more than $1000 for her share of the estate, by suit or compromise, he, the said Shoenberger, was to make plaintiff equal to what she recovered, to pay the difference between $1000 and what she might get, and that on that condition Hackman and his wife executed the paper and gave it to Shoenberger;" the said evidence not corresponding with the *allegata* in the declaration.

2. The court erred in admitting Jacob Souder to testify to the execution of a supposed release of A. S. Hackman and wife, not produced on the trial.

3. The court erred in rejecting the copy of the articles of agreement between Abraham Hackman and Dr. Peter Shoenberger, purporting to bear date the ——————————, proved by Henry Musselman, and admitted to be in the handwriting of Judge Glonninger, and with whom he proved the original had been left.

4. In instructing the jury [in reference to the effect of the execution, acknowledgment, and delivery to Henry Musselman, by Abraham Hackman and wife, of their deed, to Dr. Shoenberger] as follows, to wit : "If this deed was not accepted when tendered before the death of Mrs. Hackman, but was brought back and handed to Abraham Hackman, one of the grantors, and if before Dr. Shoenberger accepted of it, Mrs. Hackman died, which, according to the testimony, was the case, such deed obtained after the death of Mrs. Hackman, did not convey her interest in the estate mentioned in the deed, although it may have been executed by her during her lifetime."

5. In instructing the jury (in answer to the 1st, 2d, and 3d points put to the court by the defendants' counsel) as follows:— " If the jury are satisfied from the testimony, that a controversy existed between the *parties* in relation to the Huntingdon Furnace, and that the plaintiff claimed an interest in that property, and a compromise was entered into between the *parties*, by which the claim was *relinquished* by the plaintiff; and, in pursuance of such compromise released such interest, and that *then* the defendants' testator, in consideration of such release, entered into an *agreement*, upon which this suit is predicated, by which he stipulated and agreed, upon the happening of certain *contingencies*, to pay the plaintiff a certain amount, and those *contingencies* have happened, *then there can be a recovery had in this case ;*" thus, in view of the averments in the declaration, leaving it altogether uncertain who are intended to be included in the

term "*parties,*" and to *whom* the claim of the plaintiff was "*relinquished,*" or to *whom* his "*interest*" was *released,* or upon the "*happening*" of *what* "contingencies" a recovery could be had in favour of the plaintiff.

6. In instructing the jury (in answer to the 4th, 5th, and 6th points put to the court on the part of the defendants) as follows: "I am of the opinion that if you believe from the testimony that the agreement entered into between the plaintiff and Dr. Shoenberger at the time the paper or release referred to was given, that Dr. Shoenberger agreed, that if at any time thereafter any one of the other heirs of Mrs. Hackman should *receive* or *recover* for their share of said real estate, for which the release was given, any greater or larger sum than the sum of $1000 paid to the plaintiff, the same amount of such excess should be paid to the plaintiff by the defendants' testator, *then this action can be maintained;*" thus overlooking the only testimony that had been given of the specific contract made between the plaintiff and the defendants' testator on the trial, and putting to the jury a hypothetical proposition, almost in the words of the declaration, without any evidence to support its specific averments; or, in other words, allowing the averments to be proved by assumption without evidence, and *against* the specific evidence given, bearing upon the precise point in issue.

7. In answering the said 4th, 5th, and 6th points in the negative, by saying, "neither am I of the opinion that a failure to prove the facts or matter mentioned in the 4th, 5th, and 6th points will bar the plaintiff from recovering in this action."

8. In instructing the jury, in answer to the 7th point put by the defendants' counsel, as follows, viz.: "I do not consider it necessary that before the plaintiff can recover in this case, that it was necessary to prove the release of the plaintiff's rights or claims, by the proof and production of the same on this trial; this action is not founded, as I conceive, upon the release, or anything contained therein, but upon an agreement independent of that release, and that such release was given in part consideration of such agreement, and was merely part performance of the same."

9. In answering in the negative the 8th point put to the court by the defendants' counsel, which point was as follows: "The court is further requested to charge the jury that the plaintiff is not entitled to recover against the defendants according to the allegations in his declaration," thereby instructing the jury in effect that the material averments had all been proved by the evidence, or that it was unnecessary that they should be proved.

10. In answering, in substance, in the negative, the 9th point of the defendants, which point was as follows: "That the plaintiff has not proved facts to enable him to recover against the

[Executors of Shoenberger *v.* Hackman.]

defendants, according to the averments in his declaration," and in saying to the jury, in answer thereto, as follows : " The gist of this action is the alleged agreement entered into by Dr. Shoenberger with the plaintiff, upon his obtaining from the plaintiff his release for his interest in the Huntingdon Furnace property. If this agreement, as alleged, has been proven by the testimony, then the averments or inducements set forth in the declaration, and which have not been proven, are not material to enable the plaintiff to recover."

11. In saying to the jury in answer to the 1st, 2d, and 3d points propounded by the defendants' counsel in the first clause of the court's answer to said points, as follows : " In this case I am of the opinion that it was not necessary for the plaintiff to prove that he and defendants' testator claimed as joint owners the Huntingdon Furnace, nor do I deem it necessary that it should have been proven that the defendants' testator, as a claimant, entered into a controversy (compromise) with the plaintiff with regard to their respective rights, and paid to the plaintiff the sum of one thousand dollars for the release, and that he was negotiating for himself," thereby instructing the jury that it was not necessary for the plaintiff to prove the averments in the declaration that the plaintiff claimed to be owner jointly with Maria Zook, Elizabeth Bowman, and Mrs. Musselman, of the one-eighth part of the real estate mentioned, and that the said Dr. Peter Shoenberger, now deceased, and his assigns claimed to own the same and the other undivided seven-eighths of said property, and that a controversy arose between the said parties relative to the rights of each of them.

12. The court erred in overruling the motion in arrest of judgment, and in rendering judgment on the verdict in favour of the plaintiff.

The case was argued in this court by *John G. Miles* and *Thos. E. Franklin*, for plaintiffs, and by *Thaddeus Stevens*, for defendant in error.

The opinion of the court was delivered, October 3d 1860, by

Thompson, J.—Everything material in this case was passed upon in Zook *v.* Shoenberger's Executors, 10 Casey 24. The contract was the same as in the present case, and the only substantial difference consists in one of the parties being different. The present is a suit by another of the heirs of Mrs. Hackman, against the executors of Dr. Shoenberger, on a promise to pay an additional sum of money for a release of an interest in certain property in Huntingdon county. The merits of the case seem to have been fully investigated : each party giving such evidence as

[Executors of Shoenberger *v.* Hackman.]

was applicable to the issue, without being interfered with by technical difficulties in the way. But objections and exceptions, on technical grounds principally, are presented here by the defendants below, in hopes of a reversal, which, if successful, would only prolong the controversy, as in every instance almost, the objection could be obviated on another trial. The objections do not seem to touch the merits.

The first exception is to the testimony offered in proof of the contract. The principal ground of objection to it was a variance between the date in the *narr.* and the proof offered—the latter being subsequent in time to the former. In declaring on a verbal contract, time and place are generally not essential to be proved as laid, but of course must be laid as existing before the time stated in the *narr.* Here the time spoken by the witness was subsequently to the cause of action as laid; he did not, however, speak with certainty as to the date, but gave the substance of the contract otherwise as laid. The court were right in receiving the evidence, for the party might, by subsequent proof, correct the statement. But if not, the *narr.* might have been amended to correspond with the date as testified to, it being long anterior to the time of bringing the suit. The defendant well knew this, and did not rely on the variance, but gave evidence in reply, and, failing on the merits, now claims a reversal on the ground of a variance. It is plain that they were not prejudiced by it. The specific ground of objection in fact does not seem to have been taken. If it had been, the matter was amendable, and it will be regarded here as amended: Roop *v.* Roop, and Ward *v.* Ward, 11 Casey; Wampler *v.* Shisler, 1 W. & S. 365; Miller *v.* Weeks, 10 Harris 89.

We cannot reverse on this ground.

The next objection is to the testimony in regard to the *execution* of a release without its production, and without having laid grounds for the introduction of secondary evidence in regard to its execution. It was not the contents which were offered to be proved: it was simply the act of signing a paper called, and supposed to be, a release. This act, as averred in the *narr.*, was the consideration for the promise to pay, but the consideration was not involved in the issue trying. It was, therefore, a collateral matter to the issue, and might be proved like any other fact. The non-production of the release did not imply the withholding of evidence, which would work against the plaintiff, for its contents were not involved by the issue, but if produced, the signatures would have been proved either by some one having seen them made, or who knew the handwriting of the signers: or it might have stood as authenticated by the acknowledgment. But the fact of signature being the only fact sought to be proved, there being no dispute about the identity of the instrument,

proof by an eye-witness without the instrument in his hand, cannot be said to be secondary to that of a witness holding it in his hand—nor to the testimony of belief in the signature from acquaintance with the handwriting of the party — nor to the acknowledgment before the justice. It is in the same degree with these modes of proof, and while it is so, is not secondary. The rule that excludes secondary evidence in a contest with primary, does not mean that everything is secondary which is not of the highest grade of proof, but only that which discloses the existence of other evidence, the non-production of which may be supposed to be on the ground that if produced would work against the party offering it. This is always so in the case of attempted proof of the contents of a paper not produced, and not lost or withheld, after notice to produce it. There the contents cannot be proved, for there is no legal reason why the paper should not be produced, and an unfavourable inference from its being withheld would necessarily arise. But here the suit was not on the paper: its contents had nothing to do with the case. The promise was to pay on account of the signature obtained by the promissor. The contract he did not desire even to have read by the witness, and which, after being signed, was taken away by him. In Widdifield v. Widdifield, 2 Binn. 245, a partnership was held to be proved by the fact of partnership testified to, although the witness said there was an agreement in writing. A sale of a note may be proved without producing it, where there was no inquiry about its contents: Lamb v. Molerby, 3 Monr. 179; Cowan & Hill's notes to Philips' Ev. part 1, note 272. So in trover for notes: McClean v. Hertzog, 6 S. & R. 154. In 1 Greenlf. Ev. 89, it is said: "In cases, however, where the written communication or agreement between the parties is collateral to the question in issue, it need not be produced," and as an instance, the author cites the case of a suit by a plaintiff for his share of money had and received by the defendant, under a written security for a debt due to both. Bayne v. Stone, 4 Esp. 13; Leecher v. Welsh, 17 Mass. 160; McFadden v. Kingsberry, 11 Wend. 667; Southwick v. Stephens, 10 Johns. R. 443. We think the testimony came within these principles, and was well received.

The next matter to be noticed is the instruction of the court in reference to the deed of the 20th of July, 1832, from Abraham Hackman and wife, to Dr. Shoenberger. The plaintiff in error claims that it was delivered as an escrow to Abraham Hackman to be delivered to Dr. Shoenberger on his paying the consideration-money, and that a delivery after the death of his wife passed her estate. We entirely repudiated this view, in the case of Zook v. Shoenberger's Executors, already cited, and have but little further to add on the subject now. Conceding that it was

[Executors of Shoenberger *v.* Hackman.]

delivered as an escrow to Musselman by Hackman and wife to be delivered to Dr. Shoenberger on his paying the consideration, the proof was undisputed that it was offered to, and refused by the grantee and returned to the grantors. How this fact could constitute Hackman an agent to hold it as an escrow, and deliver it after the death of his wife, we are not informed. Mrs. Hackman did not constitute him such, and the agency of Musselman expired before her death. The deed was, therefore, inoperative because unexecuted by delivery till after Mrs. Hackman's death, and could not be delivered to pass her interest and that of her heirs by anybody. A lucid definition of what is an *escrow*, and how to be delivered, is given in Shepherd's Touchstone, p. 58. "The delivery of a deed as an escrow," says the author, "is said to be when one doth make and seal a deed and deliver it unto a stranger, until certain conditions be performed, and then be delivered to him to whom the deed is made to take effect as his deed. And so a man may deliver a deed, and such delivery is good. But in this case, two cautions must be heeded: *first*, that the form of the words used in the delivery of a deed in this manner be apt and proper; *second*, that the deed be delivered to *one that is a stranger* to it, and not to the party himself to whom it is made." As we said before, the deed afterward delivered by Hackman passed nothing but his life estate. Whether the previous agreement for the sale was made, as stated in the former case, in writing, makes no difference whatever on the question of what passed by the deed. We see nothing wrong in the instructions of the court on this point.

We do not think it material to discuss the other assignments of error; suffice it to say, we discover nothing in any of them, nor in any part of the case, that calls for correction. It would have relieved us somewhat if the counsel for the defendant in error had favoured us a little more at length in his paper-book with his views and authorities on the points raised by his adversary.

Judgment affirmed.