**Plasterer Estate**

*H. Rank Bickel, Jr.,* for the accountant.

*R. Hart Beaver,* of *Beaver & Wolf,* and *Philip S. Davis, Katz, Buzgon & Davis,* for legatees.

*C. Vincent Henry, 3rd,* of *Henry & Mesics,* for claimants.

GATES, P. J., September 27, 1972.—It is a gross understatement to say that the Isaac Plasterer estate has been a difficult one to conclude. It has been in constant litigation since 1958. Fortunately, we are nearing the finish line. All that remains for us to decide is the claim of Harry W. Fisher, who has filed exceptions to the auditor's report, wherein Fisher's claim for expenses incurred in connection with his unsuccessful attempt to purchase property from the estate was disallowed.

It is unnecessary to detail the lengthy history of this estate. For present purposes, we can begin on June 26, 1968, when the administrator d. b. n. c. t. a. petitioned us for leave to make a judicial sale of a parcel of real estate identified as the "Plasterer Hotel" in the City of Lebanon, Pa.

Pursuant to our order of sale, the property was exposed for public sale on September 18, 1968. The sale was subject to confirmation by the court, and this condition was noted in the advertisements and read aloud prior to the beginning of the sale.

The claimant, Harry W. Fisher, was the highest and best bidder at the sale, having bid a price of $50,250. Fisher paid $5,025 as earnest money and signed the conditions of sale.

Thereafter, upon presentation of a petition for confirmation in open court on October 7, 1968, there were indications that there were other bidders interested in the property at a price in excess of the amount bid by Mr. Fisher. After due consideration, on November

19, 1968, we directed that sealed bids be received after proper advertisement. On December 31, 1968, a report of a new sale and a request for a confirmation were presented to us. On January 3, 1969, we confirmed the sale to Sadie M. and Mabel H. Plasterer for the sum of $67,500.

Subsequently, Mr. Fisher filed a petition for the allowance of the expenses incurred in connection with his unsuccessful bid. We refused to issue a rule upon the administrator d. b. n. c. t. a. but directed that the claim be presented at the audit. The claim was submitted at the audit, and all parties stipulated and agreed that the amounts claimed were fair and reasonable. However, payment of the expenses by the estate was objected to as not being a proper estate liability and that the particular expenses were unnecessary. The auditor disallowed the expenses, and Mr. Fisher filed exceptions to his findings. It is these exceptions which hopefully constitute the final obstacle to the settlement of the Isaac Plasterer Estate.

No one now disagrees with our prior ruling that a fiduciary owes a duty to obtain the highest and best price possible for the sale of trust assets. Thus, where, as here, prior to confirmation of a sale by the court, a higher and better price is received, it is perfectly proper for the court and the administrator to disavow the prior agreement of sale and accept the highest price available. But the controversy here is whether the unsuccessful bidder at the original sale should be reimbursed for reasonable and necessary costs incurred by him in connection with the first, but disallowed, sale. We think he should be.

We come to this conclusion not only by way of logic and fairness but by weighty legal precedent.

In Yost's Estate, 40 D. & C. 208 (1941), the Orphans' Court of Northumberland County was faced

with an almost identical situation. There, the executor, with approval of the court, sold estate property at public sale for $480. Subsequently, realizing that the price was inadequate, the executor secured a better price, to wit, the sum of $800. Then a creditor petitioned for a rule which was granted on the successful bidder and the executor to show cause why the sale should not be set aside and the premises resold. After a hearing, the court was convinced that the first price was grossly inadequate and that the better price of $800 should be accepted. The court noted that:

". . . Inasmuch as the sale as returned should not be confirmed and a resale ordered, the down money paid by the bidder should be returned, and he should be reimbursed for expenses incurred under the expectation of becoming the purchaser: Fricke's Estate, 16 Pa. Superior Ct. 38; Brown's Appeal, 68 Pa. 53; Early's Estate, 24 Dist. R. 153."

The court thereafter made an order approving the sale for $800 and further ordered the executor to pay to the unsuccessful bidder the down money paid by him and the expenses incurred under the expectation of becoming the purchaser in the total amount of $128.

A similar result was reached in Kargiatly v. Provident Trust Company et al., 338 Pa. 358 (1940). There are, of course, both procedural and factual distinctions, but they are that and that alone. The logic and reason employed by the court is equally applicable to our case. In Kargiatly, a testamentary trustee entered into a written agreement with the plaintiff for the sale of real estate, a part of the trust property, for $8,000. Shortly afterwards, the trustee received an offer of $9,000 from another purchaser. The trustee accepted the higher offer and conveyed the property for $9,000. Plaintiff was notified of the fact, and he, in turn, demanded and received back the down money.

Subsequently, he brought an action in assumpsit, and the court held that the measure of plaintiff-vendee's damages is limited to the down money and the ". . . necessary expenses incurred by him and required in such transactions . . ." The court cited as authority Seidlek v. Bradley, 293 Pa. 379; Altman v. Arata, 129 Pa. Superior Ct. 229. The court noted that defendant trust company was required to accept a better offer if one was made. Finding no fault in the trustee's conduct and the down money having been returned, the only remaining issue was the amount of the necessary expenses incurred by the unsuccessful bidder.

We fail to appreciate any different result in sales that are subject to confirmation by the court and sales by a fiduciary, duty bound to obtain the highest price for the trust property. In both situations, it is the obligation to obtain the highest price that is critical and not the method by which the sale is made. But, in either event, the disappointed purchaser should not be required to suffer a loss when he acted in good faith.

This then brings us to a consideration of the items claimed by Mr. Fisher. It was stipulated and agreed that the amounts claimed were fair and reasonable, and we have no reason to believe otherwise.

Mr. Fisher claims interest on his down payment from September 18, 1968, to January 1, 1969, in the amount of $107.50. It is conceded that this amount should be paid.

Mr. Fisher also claims the payment of insurance premiums which he paid to protect his interest in the amount of $24. We believe that this is a necessary and proper expense. The articles of agreement executed by the administrator d. b. n. c. t. a. and Mr. Fisher provided that the purchaser may increase the amount of insurance at his own expense insuring his interest in

the property. In the event of the total destruction of the property between the date of the agreement and the date of the conveyance, Fisher would have been legally bound to accept a deed to the property and to the proceeds of any insurance paid on account of the destruction of the property. He had an insurable interest, and he did, in fact, increase the coverage. The fact that the sale itself was subject to confirmation by the court does not change the character of this expense. Until the sale was confirmed or disallowed, Mr. Fisher had no idea of the outcome, and, in the meantime, he suffered the risk.

Mr. Fisher claims for fees for legal services, including a title examination in the amount of $500. A prospective purchaser would be foolhardy to attend a public sale of real estate of this value from an estate with such an incredible history of legal friction without the guiding hand of counsel all the way. Furthermore, the sale was held on September 18th, and the petition for confirmation was not presented until October 8th. The articles of agreement required settlement to be held by October 18, 1968, or upon confirmation by the Orphans' Court, whichever is later. There is nothing in this record to indicate that Mr. Fisher acted in bad faith by having the title examined, after he learned that the sale to him would be disallowed. Further, no one can seriously contend that the title examination to estate property which has been in litigation for over a decade was not necessary. Indeed, it was.

Finally, Mr. Fisher claims the sum of $120. for "expenses of examining inventory." This is all the record discloses about this item. From the record, it is not possible for us to determine whether the expense was necessary and proper. Since the burden of proof rests upon a claimant, we hold that he has failed to sustain his burden in establishing the necessity for this expense.

In conclusion, we hold that the auditor erred in disallowing Fisher's claim in the amount of $631, and we will, therefore, enter the following decree.

## DECREE NISI

And now, to wit, September 27, 1972, it is ordered, adjudged, and decreed that the balance held by the administrator d. b. n. c. t. a. shall be distributed as follows:

| | | |
|---|---|---|
| Balance for distribution | | $81,160.15 |
| Harry W. Fisher, claim for expenses | $ 631.00 | |
| Verna Houser, pecuniary legacy | 500.00 | |
| Verna Houser, interest on legacy | 178.75 | |
| Roger L. Miller his heirs and assigns, one-half of the remaining balance | 39,925.57 | |
| Mabel H. Plasterer, one-fourth of remaining balance | 19,962.42 | |
| Elmer E. Plasterer and Glenn R. Houser, administrators d.b.n. of the Estate of Sadie M. Plasterer, deceased one-fourth of the remaining balance | 19,962.41 | |
| TOTAL AMOUNT | $81,160.15 | 81,160.15 |
| | | 00,000.00 |

This decree shall become absolute, unless exceptions are filed within 10 days.