|     |      |
| --- | ---- |
| 184 | 429  |
| 205 | ²296 |

## Estate of James Devereux, deceased. Appeal of Anna F. Devereux and Mary L. Stafford.

*Bond—Presumption of payment—Evidence.*

The legal presumption of payment arising from the lapse of twenty years in the case of a bond or specialty does nothing more than shift the burden of proof. Within twenty years the law presumes that the debt has remained unpaid, and throws the burden of proving payment upon the debtor. After twenty years the creditor is bound to show by something more than his bond that the debt has not been paid, and this he may do because the presumption raises only a prima facie case against him.

One of the intervening circumstances which may rebut the presumption is the inability of the debtor to pay within twenty years, and proof of a continued inability to pay is sufficient to rebut the presumption.

Argued Jan. 6, 1898. Appeals, Nos. 124 and 142, Jan. T., 1897, by Anna F. Devereux, from decree of O. C. Phila. Co., Oct. T., 1896, No. 549, dismissing exceptions to adjudication. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to adjudication.

The opinion of ASHMAN, J., was as follows:
The bond upon which judgment was entered was given by

the decedent in 1875, three years before his death, to his son in the sum of $31,377.64. The origin of the debt was obscure. The decedent, who was a commission merchant, had lost very heavily in 1857, and continued more or less embarrassed financially thereafter. He became in some way involved in the affairs of an insurance and trust company, and was subjected to various law suits in consequence. The son declared that he had settled and compromised many of these claims for his father, and had paid others, so that at the date of decedent's death he was the sole creditor of his father, while the company itself was indebted to the decedent in the sum of $62,000. The son had returned from the army when his father's troubles with the insurance company were culminating, but what resources he had brought back with him was not shown. Further inquiry on this point would be unprofitable. The judgment was duly entered in the father's lifetime, and its validity cannot be questioned in a collateral proceeding. More than twenty years, however, have passed since its entry, and the burden of rebutting the presumption that it has been paid rests upon the claimant. That the father did not pay it while he lived seems reasonably certain. Five or six years before his death he gave up all attempts at transacting business, and his means were so limited that he was unable to keep his dwelling house in repair, or to keep down the mortgage interest. His family were forced to take boarders, and his children assisted by their earnings to maintain the household. He owned a farm property near Frankford, which was incumbered to the extent of $25,000, but this was sold by the sheriff, and yielded nothing beyond the mortgage and costs of suit. In the language of his daughter, he sold what he had, little by little, to support the family and to pay interest on mortgages. At his death the dwelling house, with its furniture, the debt due by the insurance company, and a few securities, were the sole materials from which the holder of the judgment could hope for a possible payment. The character of the securities showed how much ground there was for hopefulness. They comprised two shares of the Huntingdon and Broad Top Railroad Company, five shares in the Chiriqui Improvement Company, a defunct enterprise once located on the west coast of South Africa, and one share of a stock in a railroad which was never built. They also included an indebted-

ness of $62,000 by the United States Insurance, Annuity and Trust Company, upon which a single dividend was realized of $620. The principal item in the account, without which an accounting was scarcely called for, was a sum of $3,839, which was received in November, 1896, from the estate of a deceased relative.

With these particulars in hand, all argument based upon the relationship of the parties, as affecting the presumption of payment, may be thrown aside. That species of reasoning is always illusive, because it works with equal efficiency in either direction. A son would not be likely to harass his parent with demands for payment which the father was unable to meet, and this circumstance would favor the presumption of nonpayment. On the other hand, a father in failing fortunes would be tempted to protect his son, even at the expense of other creditors, and this would strengthen the theory of payment. The evidence, while uncontradicted, is a flat bar to the presumption of payment, because it proves as a substantive fact that payment was impossible. It makes out a case not merely of insolvency, for, as we said in Griffith's Estate, 14 W. N. C. 486, "a man may pay one creditor and be unable to pay ten creditors," nor of poverty, for a debtor may impoverish himself by paying the very debt which is in controversy, but a case in which, after the entry of the judgment, no fund was in existence out of which it could be satisfied. The award to the son was proper, and the exceptions thereto must be dismissed.

*Errors assigned* were in dismissing exceptions to adjudication.

*A. E. Stockwell* and *F. Carroll Brewster*, for appellants.— After the lapse of twenty years a judgment is presumed to have been satisfied, unless there are circumstances to account for the delay : Cope v. Humphreys, 14 S. & R. 15 ; Summerville v. Holliday, 1 Watts, 507 ; Bailey v. Vehmeier, 7 W. N. C. 195 ; Van Loon v. Smith, 103 Pa. 238 ; Biddle v. Bank, 109 Pa. 349 ; Wheelen v. Phillips, 140 Pa. 33.

The presumption of payment arising from the lapse of twenty years cannot be rebutted save by clear evidence : Peters's App., 106 Pa. 340 ; Hayes' App., 113 Pa. 380 ; Gregory v. Com., 121 Pa. 611 ; Green v. Plattsburg, 13 Pa. C. C. 335. Until such presumption is rebutted the judgment does not even furnish

prima facie evidence of indebtedness: Lash v. Von Neida, 109 Pa. 207; Runner's App., 121 Pa. 649.

The burden of proof was on the claimant to rebut the presumption: Reed v. Reed, 46 Pa. 242; Bentley's App., 99 Pa. 500.

*N. DuBois Miller*, with him *Biddle & Ward*, for appellee.— The presumption of law that a judgment which has not been revived within twenty years has been satisfied, is one which can always be overcome by evidence, which if uncontradicted will lead any reasonable man to believe that the judgment had not been paid: Eby v. Eby, 5 Pa. 435; Reed v. Reed, 46 Pa. 242; Smith v. Shoenberger, 176 Pa. 95.

OPINION BY MR. JUSTICE FELL, January 24, 1898:

The legal presumption of payment arising from the lapse of twenty years in the case of a bond or specialty does nothing more than shift the burden of proof. "Within twenty years the law presumes that the debt has remained unpaid, and throws the burden of proving payment upon the debtor. After twenty years the creditor is bound to show, by something more than his bond, that the debt has not been paid, and this he may do because the presumption raises only a prima facie case against him. It must be borne in mind that the presumption from lapse of time is not that there is no contract existing between the parties. If it were, proof of a new contract might be necessary. It is only an inference that the debtor has done something to discharge the debt, to wit: that he has made payment:" Reed v. Reed, 46 Pa. 239. While the evidence to overcome the presumption must be of a satisfactory and convincing character, the same precision of proof is not required as is required to remove the bar of the statute of limitations: Gregory's Exrs. v. Com., 121 Pa. 611. Each case must necessarily be determined on its own peculiar facts, and in each the question is whether the presumption of law that the debt has been paid is overcome by proof of facts and circumstances which tend to show that it has not been paid. The complete legal presumption does not arise short of twenty years, but a shorter period aided by circumstances which contribute to strengthen the presumption may furnish ground for inferring the fact of payment. The ability of the obligor to pay and the pressing need of the obligee

for money have been recognized as circumstances which aid the presumption of payment: Hughes v. Hughes, 54 Pa. 240. On the other hand it was held in Tilghman v. Fisher, 9 Watts, 441, that one of the intervening circumstances which may rebut the presumption is the inability of the debtor to pay within twenty years, and proof of a continued inability to pay was recognized in Taylor v. Megargee, 2 Pa. 225, as sufficient to rebut the presumption. There are convincing reasons for the ruling that proof of the insolvency of the debtor alone will not rebut the presumption. An insolvent may be possessed of property or be in receipt of an income, and have the means of payment; but proof of positive inability to pay is in effect proof that payment could not have been made.

The judgment in this case was for $31,377.64, and was entered in 1875. The decedent died in 1878. Before 1875 he had become involved by reason of indorsements for a large amount, and had lost all his property except a farm which was incumbered for its full value, the house in which he lived which was mortgaged for nearly its value, and personal property found to be worth less than $200. His dwelling was in bad repair, owing to his want of means, and he was obliged to borrow money from his children to pay the interest on his mortgages. After 1875 he was out of business; he earned nothing and was in receipt of no income. It is as clear as testimony can make it that after the date of the judgment he was absolutely without means to pay any part of it. This conclusion does not rest on the testimony of those who had no real knowledge of his affairs, and could only guess that he had not paid because he did not appear to have the means to pay, but on the testimony of his counsel and of members of his family who knew his circumstances and contributed to his support. After his death there was no estate from which payment could have been made. The only assets which came into the hands of his administrator were two shares of stock worth $15.00, and four years after his death, a dividend from an assigned estate of $632, which was applied to the payment of interest on the mortgage on his dwelling house. The sum now in controversy was received by the administrator in 1896 on the termination of the life estate of the decedent's mother.

The decree is affirmed at the cost of the appellant.