## Altman, Assignee, Appellant, *v.* Arata.

230

Argued September 30, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE. STADTFELD, PARKER, JAMES and RHODES, JJ.

*Theodore G. Rich,* with him *James L. Stern,* of *Rich & Stern,* for appellant.

*John A. Skelton, Jr.,* for appellee.

OPINION BY PARKER, J., December 17, 1937:

This is an action in assumpsit brought by Louis H. Altman as assignee of Wolf Greenblatt, the vendee in a written agreement for the sale of real estate, against Matilda Arata, the vendor, to recover damages on account of the failure of the vendor to convey the real estate in accordance with the terms of the contract. The plaintiff claimed as damages the difference between the contract price and the market value at the time the contract was breached, and a down payment of $100 received by the vendor on execution of the agreement. The case was tried before a judge without a jury in the municipal court. The trial judge found for the plaintiff for the amount of the down payment and refused to award further damages, and plaintiff has appealed. We are of the opinion that the court below reached a correct result.

The agreement was dated April 18, 1935 and provided for the sale by Matilda Arata to Wolf Greenblatt of a parcel of land known as No. 2426 North 31st Street, Philadelphia, for $1,300, of which $100 was paid on the execution of the agreement and the balance was to be paid part in thirty days and the remainder in sixty days on delivery of the deed. Vendor and vendee bound themselves respectively to convey and pay the purchase price. It was not stated in the agreement in so many words that Matilda Arata had title to or possession of the real estate when she contracted to convey. On May 9, 1935, Matilda Arata returned by mail to Altman her copy of the agreement together with her check for $100, saying: "Charles Schick refuses to sign." Greenblatt assigned his interest in the agreement to Altman. In fact, Greenblatt, who was the father-in-law of Altman, was but a straw man for the latter who furnished the down payment and conducted all the negotiations. Altman was a licensed real estate broker. On May 23, 1935 Altman brought this action claiming the damages we have indicated.

Matilda Arata defended on three grounds: (a) She alleged that when she made the contract she explained to Altman that her nephew, Charles Schick, was the owner of the premises and that it was verbally agreed that the contract should not be binding unless she was able to persuade Schick to sign it; that she endeavored to secure his signature and he declined to sign; and that she then returned the agreement to Altman with her check for $100 which he refused to receive. (b) She asserted that she had acted in entire good faith and that as a matter of law Altman was not entitled to anything for the loss of his bargain other than the return of the purchase money. (c) She alleged the market value of the property was only $1,300 and that she was at all times ready and willing to return the

down payment of $100 which she still offers to the plaintiff.

The title to the property had been in a building and loan association, but in April, 1935, prior to the making of the agreement, it was conveyed to Charles F. Schick, a nephew of Matilda Arata. The real estate had been encumbered by a first mortgage to Matilda Arata as guardian of Schick and a second mortgage to the building and loan association. The building and loan association secured title from the owner and the mortgage to Matilda Arata was satisfied when the deed was made to Schick. Matilda Arata testified that she held the mortgage for her nephew at all times until he came of age.

The principal contention at trial and at argument for judgment n.o.v. for the plaintiff for the full amount of his claim, including loss of the value of his bargain, was whether the parol evidence rule as laid down in *Gianni v. Russell & Co.*, 281 Pa. 320, 126 A. 791, and subsequent decisions applied, and made evidence as to the collateral parol agreement with reference to obtaining the signature of Schick inadmissible. The court below based its conclusion and verdict mainly, but not exclusively, on the ground that the evidence was admissible and that the parol understanding was as alleged by the defendant.

The members of this court are not in agreement as to the admissibility of the testimony for the purpose of showing a separate and distinct understanding or even for the purpose of showing that the agreement was not to be effective until the signature of Schick was obtained. We are, however, of the opinion that the court reached a correct conclusion regardless of this question, but for another reason.

Assuming for the sake of argument only that the evidence was not admissible for the purpose indicated, such part of the evidence as was pertinent to the fixing

of the damages suffered was admissible. The evidence and findings of fact by the court below lead to the irresistible conclusion that plaintiff is not entitled to damages for the loss of his bargain and as he proved no other damages he is only entitled to the return of the down payment.

It clearly appears that the title to the real estate was in Schick when the contract was made, that he refused to join in the sale and that Matilda Arata endeavored to persuade Schick to do so. Altman testified that Matilda Arata told him she was the owner of the real estate, while she testified that she told him that Schick was the owner and that it would be necessary to secure his signature and that she took the contract for that purpose. The trial judge accepted the version of the defendant. He not only refused a point to the contrary presented by the plaintiff, but he states: "The credibility of the witnesses was for the trial Judge, who sat as a fact-finding body and credited the testimony of the defendant." He then, and in that connection, cited the testimony showing that the vendor advised Altman that title was in Schick. The trial judge having accepted the version of the defendant, his conclusions have all the force and effect of the finding of a jury as the case was tried by a judge without a jury. There was no affirmative evidence of bad faith on the part of the vendor and the plaintiff produced no evidence of expenses incurred by him on account of the contract.

The question presented to us is, therefore, reduced to this. What is the measure of damages for non-performance of a written agreement for the sale of land where the vendee knows when the agreement is made that the vendor does not have title, if the vendor is unable to secure the title, and no bad faith is shown upon the part of the vendor?

A situation quite similar to the one we are dealing with arose in the early case of *Bitner v. Brough,* 11 Pa.

127. There a husband in his own name contracted to sell a parcel of real estate and the wife refused to join in the deed. On the subject of the measure of damages the court said: "When the vendor of an estate is, *without fraud on his part,* incompetent to make out a title, the purchaser is not entitled to recover damages for the loss of his bargain, beyond the money paid, with interest and expenses; although it appears that a considerable profit might have been derived by him from the completion of the purchase." Also see *Glasse v. Stewart,* 32 Pa. Superior Ct. 385. Prior to the case of *Seidlek v. Bradley,* 293 Pa. 379, 142 A. 914, there was some confusion in the cases both in the Supreme Court and in this court as to the proper measure of damages for breach of a contract for the sale of real estate. This arose from a failure to distinguish between the rules relating to written agreements and those relating to oral agreements. In the Seidlek case Mr. Justice KEP-HART (now Chief Justice) after an exhaustive review of the cases previously decided laid down in clear and terse language this rule (p. 383): "The general rule may be stated, a vendee in a contract for the sale of land may recover as damages the loss of his bargain if this contract is in writing, and the vendor in bad faith refuses to convey, or if the contract is in parol and it was obtained by fraud. In all other cases of contracts for sale of land, whether written or parol, vendees are limited to the money paid with interest and expenses." Exhaustive notes on this subject will be found in 48 A. L. R. 12 and 68 A. L. R. 134.

"Mere failure to convey is not fraud which will subject the vendee to further damages": *Orr v. Greiner,* 254 Pa. 308, 314, 98 A. 951. Also see *Harris v. Harris,* 70 Pa. 170, *Rineer v. Collins,* 156 Pa. 342, 27 A. 28. The court by its finding having eliminated the claim that Matilda Arata pretended to be the owner of this property and having accepted her claim

that she advised Altman that she was not the owner, but that her nephew, Schick, was, there is not only no evidence of bad faith upon the part of the vendor, but there are no facts from which that inference could be drawn. The evidence does not show that the vendor was guilty of collusion, tort, artifice, fraud or that she acted in bad faith to escape from a bad bargain. The plaintiff is limited to his claim for a return of the purchase money, no other expenses having been shown. The burden of proof was on the plaintiff to make out his case: *Glasse v. Stewart,* supra.

Judgment affirmed.