## Delvitto, Appellant, *v.* Schiavo et ux.

Argued November 12, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Fred B. Trescher,* with him *Everett S. C. Sorber, D. J. Snyder, Jr.,* and *Kunkle, Trescher & Snyder,* for appellant.

*Carroll Caruthers,* for appellees.

OPINION BY ARNOLD, J., March 15, 1949:

The plaintiff originally filed a bill in equity for specific performance of a written option running from

defendants to the plaintiff. Under Equity Rule 49 this was certified to the law side of the court, whereupon a statement of claim and an affidavit of defense were filed in an action of assumpsit. The plaintiff sought to recover damages for the wilful refusal of the defendants to transfer to him the subject matter of the option, i. e., a hotel building with its furnishings and personal property, the land upon which it was erected, and a liquor license. The affidavit of defense admitted the execution and delivery of the option, and set up but one affirmative defense: that prior to the execution of the option the plaintiff agreed with the defendants that it was to be inoperative in the event (which afterwards occurred) that two sons-in-law of the defendants returned from military service and desired to retain the hotel. It also averred that the plaintiff prepared the option and omitted from it the stipulation above mentioned.

The defendants offered no evidence, and the court directed a verdict for the plaintiff for only $100 (hand money paid when the option was signed, which was to be a credit on the purchase price of $22,000). The court refused a new trial and the plaintiff appealed.

At the close of the plaintiff's case no evidence had been given of any affirmative defense, and the option stood without impeachment as the contract of the defendants. The plaintiff had procured two men who agreed to buy the property from him for $30,000. The option period did not expire until December 21, 1945, and defendants received a letter about October 10, 1945, signed by plaintiff's attorney, giving notice of his election to exercise the option. Earlier in October plaintiff introduced the prospective purchasers to the defendants,[1] whereupon Schiavo said: "Listen big-boy, I am not going to sell, *I want more money.*" Still within the

---

[1] Thus the damages were actually foreseen and the loss could be shown with reasonable certainty: Restatement, Contracts, §§ 330, 331.

term of the option and on December 17, 1945, defendants were served with a written notice of plaintiff's election to exercise the option, signed by him. At the same time plaintiff offered defendants a certified or cashier's check for the balance of the option price, to wit, $21,900. Thereupon Mrs. Schiavo, in the presence of her husband, said to the plaintiff: ". . . why don't you make it $3000 more and I think we can do business." Her husband said: "No, under no circumstances, we are not going to sell the place." The defendants did not object that the balance of the consideration, $21,900, was offered in the form of a certified check rather than money, and thus could not thereafter raise such question: Restatement, Contracts, § 305; *Schaeffer, to use, v. Coldren et al.*, 237 Pa. 77, 85 A. 98.

From this uncontradicted evidence the jury could find that the defendants acted in bad faith and wilfully refused to convey. If it so found, the plaintiff's recovery could not be limited to the $100 paid on the purchase price, but he was entitled to compensation for his actual loss, or, as it is sometimes expressed, damages for the loss of his bargain. In *Seidlek v. Bradley*, 293 Pa. 379, 383, 385, 142 A. 914, the Court said: "The general rule may be stated, [that] a vendee in a contract for the sale of land may recover as damages the loss of his bargain if his contract is in writing, and the vendor in bad faith refuses to convey. . . . Appellant refused to carry out his agreement to convey to appellee [plaintiff] because he could not sell to her at a profit. *From this evidence the jury could find bad faith.*" (Italics supplied.) These rules were reiterated in *Altman, Assignee, v. Arata*, 129 Pa. Superior Ct. 229, 195 A. 454, and *Kargiatly v. Provident Trust Company of Philadelphia et al.*, 338 Pa. 358, 12 A. 2d 11. Here, when the plaintiff rested, nothing in the record deprived him of such damages.

The trial judge ruled that plaintiff could not recover the loss of his bargain because he was the "real estate agent" of the defendants, and could not make a secret profit from the transaction. Such position is untenable. The written option was clear and unambiguous. Under it the plaintiff was required to and did pay $100, to be applied on the purchase price of $22,000 if the option was exercised, and to be forfeited to the defendants if it was not exercised. The defendants never claimed that under the option the plaintiff was their "real estate agent"; and under Pa. R. C. P. 1030, were bound to plead such an affirmative defense under the heading "New Matter." Under the agreement plaintiff was not entitled to any commissions, but his compensation was to be whatever profit he could make. If he had sued for an agent's commission for making the $30,000 sale, he could not recover in the face of the written option, which was not a commission agreement: *Gianni v. R. Russell & Co., Inc.,* 281 Pa. 320, 126 A. 791. The trial court's determination was based on the cross-examination of the plaintiff, who was asked: "You had come to them as a real estate agent, and to get them a purchaser for the property, is that correct?" A. "Yes." Defendants' counsel next undertook to show that the plaintiff sought to obtain a *secret* profit unknown to the defendants and asked: "Did you disclose to them you had a purchaser for $30,000? A. It was none of their business what the purchase price was." This showed that the plaintiff never considered himself as the real estate agent of the defendants. He was then asked: "When did you quit acting as their agent? A. I didn't stop being their agent, they sent for me three or four different times. Q. You went down to find a purchaser for . . . [defendants]? A. That is right. Q. They were dealing with you to find a purchaser? A. Up until I had the option [when] I was on my own. Q. You didn't tell them at any time you were on your own? A. . . . the

option answers that itself. Q. That is what you relied on? A. Yes." Under the testimony, if believed, the plaintiff was but an optionee. As we have stated, the defendants had accepted $100 as hand money, had neither pleaded nor claimed that the plaintiff was anything but an optionee, and had offered no evidence to contradict the written agreement. The defendants knew its contents, and their refusal to carry out their agreement was not for any such reason as given by the court below.

Some subsidiary questions should be noticed. Appellees contend that the second written notice (Exhibit 3) of plaintiff's election to exercise the option had not been given when the *bill in equity* was filed, and that the plaintiff therefore cannot stand on it, because the assumpsit action was the result of the certification of the bill in equity. They also contend that Exhibit 2, being signed by the plaintiff's attorney and not by the plaintiff, was not effective; but under the only evidence in the record the refusal of the defendants to convey was positive, unqualified and for no such reasons. The second notice was entirely effective and was given well within the option period. It was pleaded as an exhibit attached to the plaintiff's declaration. The fact that the notice was served after the filing of the bill, but before certification thereof, resulted in no possible harm to the defendants. Under modern practice such trivialities ought not to obscure the merits of the case.

The court held that the prospective buyer from the plaintiff could not testify to the resale price because his written agreement was not produced, i. e., the best evidence rule. It is unnecessary to pass upon this question, since on a retrial the plaintiff obviously will produce the original resale agreement and offer it in evidence, or, if the same cannot be obtained, will account for its loss. To do otherwise would, of course, weaken the plaintiff's case. But it is very doubtful whether the

resale agreement comes under the best evidence rule, which usually applies to an instrument upon which suit is brought or defended. The witness' oral evidence of the resale price was a collateral matter and went only to the question of damages. Cf. *McCullough v. Holland Furnace Co.*, 293 Pa. 45, 50, 51, 141 A. 631; *Pecoraro Alias Packrall v. Pecoraro*, 105 Pa. Superior Ct. 543, 161 A. 591; *City of Philadelphia to use v. Stange et al.*, 103 Pa. Superior Ct. 275, 157 A. 358; *Cupples, Jr. v. Yearick et al.*, 99 Pa. Superior Ct. 269; *Executors of Shoenberger v. Hackman*, 37 Pa. 87, 92.

Appellees could not defend on the ground that the plaintiff, being a justice of the peace, could not hold a liquor license, for the defendants refused to transfer; and in addition, if there was any such disqualification the plaintiff could always resign his office. Also there is no reason why the plaintiff could not assign his option.

Judgment reversed and a new trial ordered.